IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
AT HARRISBURG

| | |
|---|---|
| MAX JERI, | ) |
|       Petitioner | ) ) ) |
| vs. | ) NO: |
| Scott Finley, WARDEN, FCI SCHUYLKILL, John Doe, Medical Director, FCI SCHUYLKILL, Kathleen Hawk Sawyer in her official capacity as the Director of the Bureau of Prisons, Dr. DEBORAH G. SCHULT, in her official capacity as Assistant Director for the Health Services Division of the Federal Bureau of Prisons, | ) ) ) ) ) ) ) ) ) ) |
|       Defendants | ) |

1:19CV1805

RECEIVED OCT 17 2019

FILED HARRISBURG, PA
OCT 17 2019
Per _____ Deputy Clerk

**COMPLAINT AND REQUEST FOR EMERGENCTY INJUNCTIVE RELIEF**

      Plaintiff Max Jeri, pro se, hereinafter Plaintiff, brings this action against Defendants, Scott Finley, Warden, Federal Correctional Institution (FCI) Schuylkill, John Doe, Medical Director of FCI Schuylkill, Kathleen Hawk Sawyer in her official capacity as the Director of the Bureau of Prisons, and Defendant Deborah G. Schult, in her official capacity as the Assistant Director for the Health Services Division for the Federal Bureau of Prisons, and alleges as follows:

1

## PRELIMINARY STATEMENT

This civil rights action challenges the life-threatening and discriminatory denial of necessary medical treatment in Bureau of Prison facilities overseen by the named Defendants. Government officials are obligated to meet the medical needs of people in their custody.

However, Defendants, in this particular instance have failed to render the treatment necessary to safeguard the life of Plaintiff, who is suffering from untreated internal bleeding, and is in imminent risk of death. In this instance, the federal Bureau of Prison's actions match neither its legal obligations nor the federal government's own admonishments to state and local prisons and jails to treat this serious, life-threatening condition.

## INTRODUCTION

Plaintiff is currently a prisoner at the Federal Correctional Institution (FCI) Schuylkill, operated by the United States Bureau of Prisons (BOP), in eastern Pennsylvania. The Plaintiff in this case is seeking an injunction mandating that he be treated for a life-threatening condition, as well as any accrued or future damages for the deliberate indifference to his obvious, serious medical needs known by the Defendants to be painful and potentially life-threatening. a bleeding ulcer or some other form of continuous internal bleeding, that has persisted over three months, without meaningful treatment from Defendants.

## **JURISDICTION AND VENUE**

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. The requested relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This action seeks to vindicate rights guaranteed by the Eighth Amendment to the United States Constitution, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Administrative Procedures Act, 5 U.S.C. §§ 704 and 706. 13.

This Court has authority to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, 5 U.S.C. § 706, Rules 57 and 65 of the Federal Rules of Civil Procedure and the Court's inherent equitable powers. . Venue lies in the Middle District of Pennsylvania under 28 U.S.C. § 1391.

Plaintiff is informed, believes, and based thereon, alleges that in engaging in the conduct alleged herein, Defendants acted with the intent to injure, vex, annoy and harass Plaintiff, and subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights with the intention of causing Plaintiff injury and depriving her of her constitutional rights.

As a result of the forgoing, Plaintiff seeks exemplary and punitive damages against the individual Defendants, and each of them. Plaintiff has been unable to exhaust his administrative remedies prior to the filing of this action, because of his debilitating and immediate life-threatening physical condition, and the fact that Defendants history of non-timely responses to administrative remedies would render any attempts to exhaust said remedies fruitless.

## **FACTS**

Internal bleeding, whatever the source, is an immediate life-threatening condition, and is so recognized by the federal Bureau of Prisons:

> a. Medically Necessary – Acute or Emergent. Medical conditions that are of an immediate, acute or emergent nature, which without care would cause rapid deterioration of the inmate's health, significant irreversible loss of function, or may be life-threatening. Examples of conditions considered acute or emergent include, but are not limited to: ...Hemorrhage.

U.S. Department of Justice Federal Bureau of Prisons Program Statement, HSD/HPB NUMBER: 6031.04 DATE: June 3, 2014, Patient Care.

Despite their long-standing, published policy of treating internal bleeding as a serious, life-threatening condition, Defendants have failed to provide the treatment necessary to stabilize, test, and treat Plaintiff, putting his life in danger. After initially complaining about severe stomach pain, Plaintiff, who had no known preexisting stomach distress, followed institutional procedure and reported the pain to the medical department at Schuylkill Federal Correctional Institution where he is located. Health staff told him that it was only "gas" and gave him medicine only for gas. However, the pain continued and worsened.

Plaintiff was unable to eat and sleep in a bed. He was only able to sleep sitting up in a chair. Plaintiff continued to complain and go to the infirmary, but for almost two months the only medicine provided by the infirmary was anti gas medication. Plaintiff has lost consciousness at least twice from the pain, and from his inability to eat.

Finally, after repeated complaints to prison medical staff, about passing out and his inability to eat. The week of September 8, 2019, prison medical staff finally did an occult stool test, which came back positive for blood. Prison staff did not advise him of

the results of that test for a week. On Sept 15th, Plaintiff was visited by his family, who told him that he had lost a large amount of weight, and looked exhausted, and that he had a swollen abdomen. After the visit, Plaintiff returned to his housing unit, where he again lost consciousness.

After that incident prison medical staff finally transported Plaintiff to an outside hospital where tests were performed, and Plaintiff was told by medical staff at the hospital that he had a bleeding ulcer.  A biopsy was done to determine whether the abnormality was cancerous, and Plaintiff was told that he would be advised of the test results in approximately a week. To date, he has not been advised of the results of the test. Since then the pain has gotten worse his stomach is still getting more swollen.

Plaintiff persisted in reporting to prison medical staff seeking treatment and was again transported to the outside hospital, but no tests or treatment were performed, and he merely received a prescription.  Plaintiff's symptoms persist, and he continues having difficulty eating, sleeping, and dealing with his pain.  Plaintiff has grown so weak now that he has been confined to a wheelchair, and has difficulty speaking.

In response to Plaintiff's rapidly-deteriorating health, his family made arrangements to visit him this past weekend, and were denied entry without explanation, and have not heard from Plaintiff in several days.

## THE BUREAU OF PRISONS HAS FAILED TO FOLLOW THE ACCEPTED MEDICAL STANDARD OF CARE IN THE TREATMENT OF PLAINTIFF'S INTERNAL BLEEDING

According to the Mayo Clinic, once internal bleeding has been confirmed, there are a variety of tests that can be performed to determine the source of the bleeding.

> 1. Nasogastric lavage. A tube is passed through your nose into your stomach to remove your stomach contents. This might help determine the source of your bleed.
> 2. Upper endoscopy. This procedure uses a tiny camera on the end of a long tube, which is passed through your mouth to enable your doctor to examine your upper gastrointestinal (GI) tract.
> 3. Colonoscopy. This procedure uses a tiny camera on the end of a long tube, which is passed through your rectum to enable your doctor to examine your large intestine and rectum.
> 4. Capsule endoscopy. In this procedure, you swallow a vitamin-size capsule with a tiny camera inside. The capsule travels through your digestive tract taking thousands of pictures that are sent to a recorder you wear on a belt around your waist. This enables your doctor to see inside your small intestine.
> 5. Flexible sigmoidoscopy. A tube with a light and camera is placed in your rectum to look at your rectum and the last part of the large intestine that leads to your rectum (sigmoid colon).
> 6. Balloon-assisted enteroscopy. A specialized scope inspects parts of your small intestine that other tests using an endoscope can't reach. Sometimes, the source of bleeding can be controlled or treated during this test.
> 7. Angiography. A contrast dye is injected into an artery, and a series of X-rays are taken to look for and treat bleeding vessels or other abnormalities.
> Imaging tests. A variety of other imaging tests, such as an abdominal CT scan, might be used to find the source of the bleed. If your GI bleeding is severe, and noninvasive tests can't find the source, you might need surgery so that doctors can view the entire small intestine.

"Gastrointestinal bleeding," www.mayoclinic.org. On information and belief, Plaintiff is unaware that any of these tests have been performed.

According to Mayo Clinic,

> Often, GI bleeding stops on its own. If it doesn't, treatment depends on where the bleed is from. In many cases, medication or a procedure to control the bleeding can be given during some tests. For example, it's sometimes possible to treat a bleeding peptic ulcer during an upper endoscopy or to remove polyps during a colonoscopy.  If you have an upper GI bleed, you might be given an IV drug known as a proton pump inhibitor (PPI) to suppress stomach acid production. Once the source of the bleeding is identified, your doctor will determine whether you need to continue taking a PPI.   Depending on the amount of blood loss and whether you continue to bleed, you might require fluids through a needle (IV) and, possibly, blood transfusions.

The Mayo Clinic's suggested treatment is commonly accepted throughout the medical profession. Plaintiff's symptoms have not stopped on there own, and he has received none

6

of the aforementioned treatments. The Bureau of Prison's unwillingness to perform the medically-necessary test and provide the standard level of care is clearly arbitrary.

## WITHOUT JUDICIAL INTERVENTION, PLAINTIFF WILL BE DENIED THE MEDICALLY-NECESSARY TREATMENT REQUIRED FOR HIM TO RECOVER.

If Defendant's failure to diagnose and treat Plaintiff in a timely fashion continues, it is likely that Plaintiff will survive. Without access to medically-necessary treatment, Plaintiff faces a high likelihood of death.

Plaintiff's family is also concerned that the true extent and seriousness of Plaintiff's physical condition is purposely being denied from them, for no other reason than to conceal the deficiencies of the medical care that Plaintiff has received.

Plaintiff's medical condition continues to decline, and given the restrictions of the correctional setting, he is unable to properly advocate for his own medical care, and is also denied emergency medical care, especially on weekends, due to severe staff shortages, and persistent lockdowns.

## CAUSES OF ACTION

### COUNT I –THE EIGHTH AMENDMENT (Deliberate Indifference to Serious Medical Need in Violation of the Eighth Amendment)

The foregoing allegations are re-alleged and incorporated herein. . The Defendants, while acting under color of federal law, deliberately, purposefully, and knowingly deny or will deny Plaintiff access to necessary medical treatment for his internal bleeding, which is a serious medical need.  Denying him such treatment will

continue to him pain and psychological suffering, will expose him to heightened risk for other serious medical conditions. As applied to Plaintiff, the denial of treatment by Defendants amounts to deliberate indifference to a serious medical need, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

### COUNT II – REHABILITATION ACT (Unlawful Discrimination Against Qualified Individuals with Disabilities)

. The foregoing allegations are re-alleged and incorporated herein. The Bureau of Prisons, which is overseen by Defendants, receives federal funding and is a federal agency that is subject to the Rehabilitation Act, 29 U.S.C. § 794(a). As a result of his untreated illness, Plaintiff now suffers with a "disability" under the Rehabilitation Act. The Rehabilitation Act applies to people, like Plaintiff, who are confined to a wheelchair. are participating in a supervised drug rehabilitation program.. On information and belief, Defendants do not deny medically-necessary, physician-prescribed medications or treatment to other inmates with serious, chronic medical conditions, such as diabetes.

### COUNT III – ADMINISTRATIVE PROCEDURES ACT (Agency Action that is Arbitrary, Capricious and Not in Accordance with the Law)

The foregoing allegations are re-alleged and incorporated herein. The Federal Bureau of Prisons, which is overseen by Defendants, is a federal agency whose final actions are subject to judicial review under the Administrative Procedures Act. 5 U.S.C. §§ 701, 704. 96. Under the Administrative Procedures Act, a reviewing court shall "hold unlawful and set aside agency actions, findings, and conclusions found to be arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). 97.

In this instance, the federal Bureau of Prisons has failed to follow its own Program Statement regarding serious illnesses. This final agency action automatically denies reasonable accommodation to any inmates suffering from a potentially life-threatening condition. For the reasons aforementioned, this final agency action is arbitrary, capricious, and unlawful under the Rehabilitation Act and therefore violates the Administrative Procedures Act. 5 U.S.C. §§ 704, 706 99. Defendants deny Plaintiff's access to his medically-necessary treatment. This final agency action is arbitrary, capricious, and unlawful under the Rehabilitation Act for the reasons described in Count II, and therefore violates the Administrative Procedures Act. 5 U.S.C. §§ 704, 706.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff asks this Court to GRANT the following relief: (a) Emergency, preliminary, and permanent injunctive relief ordering Defendants to provide Plaintiff with immediate medical attention for his life-threatening illness, and access to medical care during his entire term of incarceration; (b) A declaratory judgment holding that Defendants' policy of failing to treat Plaintiff pursuant to its Program Statement, as applied to Plaintiff, violates the Eighth Amendment; (c) Appoint counsel to represent Plaintiff: (d) Award Plaintiff his attorneys' fees and costs; (e) Any further relief this Court deems just and proper.

Respectfully Submitted,

By: *[signature: Max Jeri]*

## CERTIFICATE OF SERVICE

I, .Max Jeri, Plaintiff, do hereby certify that a true and correct copy of this Petition was duly served on all attorneys of record via First Class US Mail on 10/12, 2019.

Signed: *[signature: Max Jeri]*

PRESS FIRMLY TO SEAL

U.S. POSTAGE
$25.50
PME 2-Day
60045 0007
10/12/19
06  2SSK
11486717

Scheduled Delivery
10/15/2019
03:00PM



EM 0905 3577 0US



UNITED STATES POSTAL SERVICE ® | PRIORITY MAIL EXPRESS™

**CUSTOMER USE ONLY**
FROM: (PLEASE PRINT)   PHONE ( )

Max Jeri 06428-104
FCI Schuylkill
PO Box 759
Minersville, PA

**PAYMENT BY ACCOUNT (if applicable)**

**DELIVERY OPTIONS (Customer Use Only)**
☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE ( )

USDC - MD - Penna
228 Walnut St
Harrisburg, PA

ZIP + 4® (U.S. ADDRESSES ONLY)
17108- _ _ _ _

✉ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
✉ $100.00 insurance included.

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage $ |
|---|---|---|
| 17901 | | |

| Date Accepted (MM/DD/YY) | Scheduled Delivery Time ☐ 10:30 AM ☐ 3:00 PM ☐ 12 NOON | Insurance Fee $ | COD Fee $ |
|---|---|---|---|
| 10/10/19 | | | |

| Time Accepted ☐ AM ☐ PM | 10:30 AM Delivery Fee $ | Return Receipt Fee $ | Live Animal Transportation Fee $ |
|---|---|---|---|

| Special Handling/Fragile $ | Sunday/Holiday Premium Fee $ | Total Postage & Fees $ |
|---|---|---|

| Weight | ☐ Flat Rate | Acceptance Employee Initials |
|---|---|---|
| lbs. ozs. | | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |
|---|---|---|

| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |
|---|---|---|

LABEL 11-B, OCTOBER 2016   PSN 7690-02-000-9996   **3-ADDRESSEE COPY**

Money Back Guarantee for U.S. destinations only.

US AT USPS.COM®
FREE SUPPLIES ONLINE

  

UNITED STATES POSTAL SERVICE®

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; July 2013; All rights reserved.